BRYAN SCHWARTZ LAW
BRYAN SCHWARTZ (SBN 209903)
RACHEL TERP (SBN 290666)
1330 Broadway, Suite 1630
Oakland, California 94612
Tel: (510) 444-9300
Fax: (510) 444-9301
Email: bryan@bryanschwartzlaw.com
rachel@bryanschwartzlaw.com

*Attorneys for Plaintiffs and the Collective Class*

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORINA

| | |
|---|---|
| COOPER GILLESPIE, LEIGHTON WYNTER, CHRISTOPHER CASTLE, MICHAEL CONWAY, WILLIAM SEAN DUNEGAN, SKYLER FISK, JEFF FOLZ, RANDY HILL, AND DENNIS WALSH, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>   vs.<br><br><br>LUMENIS INC., and DOES 1 through 100, inclusive,<br><br>             Defendant. | **CASE NO.: 4:17-cv-02080-EMC**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SETTLEMENT APPROVAL**<br><br>Initial Complaint Filed: April 13, 2017<br>Hearing Date: March 1, 2018<br>Time: 1:30p.m<br>Courtroom: 5<br>Judge: Edward M. Chen |

**NOTICE OF MOTION AND MOTION**

TO DEFENDANT AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 1, 2018 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California 94102, Plaintiffs Cooper Gillespie, Leighton Wynter, Christopher Castle, Michael Conway, William Sean Dunegan, Skyler Fisk, Jeff Folz, Randy Hill, and Dennis Walsh will and hereby do move for settlement approval.

By this Motion Plaintiffs seek an order: 1) granting approval to the settlement agreement as a reasonable compromise of a *bona fide* dispute over wages under the Fair Labor Standards Act ("FLSA"); 2) approving payment of $162,500 in attorney fees and $17,000 in costs from the $650,000 settlement; 3) approving a $5,000 enhancement payment to Plaintiff Cooper Gillespie; 4) approving Legal Aid At Work as the *cy pres* recipient; and 5) dismissing this case with prejudice.

This Motion is based upon: this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the supporting Declaration of Attorney Rachel M. Terp ("Terp Decl.") and accompanying exhibits including the Settlement Agreement attached as Exhibit A to the declaration, the Declaration of Cooper Gillespie ("Gillespie Decl."), the Declaration of Leighton Wynter ("Wynter Decl."), the Declaration of Ralph Barrett ("Barrett Decl."), arguments of counsel, and papers, records, and pleadings in this matter.

Dated: February 2, 2018

BRYAN SCHWARTZ LAW

By: _____ */s/ Rachel M. Terp* _____
Bryan J. Schwartz, Esq.
Rachel M. Terp, Esq.

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION..............................................................................................1

II.    PROCEDURAL AND FACTUAL HISTORY ........................................2

    A.     Current and Prior Litigation..............................................................2

    B.     Facts Regarding Plaintiffs' Claims ...................................................2

    C.     Discovery. ..........................................................................................3

    D.     Settlement Negotiations. ....................................................................4

    D.     Settlement Agreement.........................................................................5

III.   THE COURT SHOULD GRANT APPROVAL OF THE SETTLEMENT AND ENTER JUDGMENT. .....................................................................................6

    A.     The Plaintiffs are Similarly Situated..................................................7

    B.     This Case Presents a Bona Fide Dispute over Entitlement to Wages............7

        1.     Risks Presented by Exemption Defenses. ..............................7

        2.     Risk of Decertification. ..........................................................8

        3.     Amount of Overtime ...............................................................8

        4.     Calculation of Overtime .........................................................9

        5.     Other Disputes ........................................................................9

    C.     The Settlement is a Reasonable Compromise of Disputed Issues. ...............9

    D.     *Lynn's Food* Strongly Supports Approval Here. .........................................12

    E.     The Standard of Approval for a FLSA Settlement Is Lower than for a Rule 23 Settlement. ........................................................................................12

IV.    THE COURT SHOULD APPROVE PLAINTIFFS' ATTORNEY'S FEES AND COSTS. ..................................................................................................13

V.     THE COURT SHOULD APPROVE PLAINTIFF GILLESPIE'S ENHANCEMENT...............................................................................................13

VI.    THE REQUESTED CY PRES BENEFICIARY IS APPROPRIATE............14

VII.   CONCLUSION ...............................................................................................14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alila-Katita et al v. U.S. Bank National Association*,
        No. 4:16-cv-3950 (N.D. Cal. 2016) ................................................................10

*Ballard v. Lumenis*,
        No. 5: 15-cv-03164-HRL (N.D. Cal.) (filed July 8, 2015) ................................. *passim*

*Barbosa v. Cargill Meat Sol. Corp.*,
        297 F.R.D. 431 (E.D. Cal. 2013) ......................................................................9

*Betorina v. Randstad US, L.P.*,
        No. 15-CV-03646-EMC, 2017 WL 1278758 (N.D. Cal. 2017) ........................7

*Bratt v. Cty. of Los Angeles*,
        912 F.2d 1066 (9th Cir. 1990) ..........................................................................9

*Campanelli v. Hershey Co.*,
        No. C 08–1862 BZ, 2011 WL 3583597 (N.D. Cal. 2011)...........................12

*Christopher v. SmithKline Beecham Corp.*,
        132 S. Ct. 2156 (2012)........................................................................................9

*Comm'n of City & Cty. of San Francisco*,
        688 F.2d 615 (9th Cir. 1982) ..............................................................................9

*Dennis v. Kellogg Co.*,
        697 F.3d 858 (9th Cir. 2013) ............................................................................14

*Dent v. ITC Serv. Group*,
        No. 2:12-CV-00009-JCM-VCF, 2013 WL 5437331 (D. Nev. 2013)........................14

*Delta Air Lines, Inc. v. August*,
        450 U.S. 346 (1981)............................................................................................9

*Duran v. U.S. Bank, NA*,
        59 Cal. 4th 1 (2014) .........................................................................................10

*Harris v. Vector Mktg.*,
        No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. 2012) ........................13

*In re Bluetooth Headset Prods. Liability Litig.*
        654 F.3d 935 (9th Cir. 2011) ................................................................11, 13

*In re Farmers Insurance Exchange*,
        481 F.3d 1119 (9th Cir. 2007) .........................................................................10

NOT. OF MOT. & MOT. FOR SETTLEMENT APPROVAL,
CASE NO.: 4:17-cv-02080-EMC

*In re Novartis Wage and Hour Litig.*,
611 F.3d 141 (2d Cir. 2010)..................................................................9, 10

*In re Pacific Enterprises Securities Litig.*,
47 F.3d 373 (9th Cir. 1995) ........................................................................13

*Jones v. Agilysys, Inc.*,
No. C 12-03516 SBA, 2013 WL 4426504 (N.D. Cal. 2013)........................7

*Keenan v. Allan*,
889 F. Supp. 1320 (E.D. Wash. 1995) .......................................................11

*Laguna v. Coverall N. Am., Inc.*,
753 F.3d 918 (9th Cir. 2014) .....................................................................11

*Lazarin v. Pro Unlimited, Inc.*,
No. C11-03609, 2013 WL 3541217 (N.D. Cal. 2013) ...............................14

*Lewis v. Wells Fargo & Co.*,
669 F.Supp.2d 1124 (N.D. Cal. 2009) .........................................................8

*Lynn's Food Stores, Inc. v. U.S.*,
679 F.2d 1350 (11th Cir. 1982) ..........................................................6, 7, 12

*Lorillard v. Pons*,
434 U.S. 575 (1978)....................................................................................11

*Morris v. Lifescan, Inc.*,
54 Fed.Appx. 663 (9th Cir. 2003) ..............................................................13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004).................................................................11

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ....................................................................9, 10

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) ....................................................................13

*Ross v. Ecolab Inc.*,
No. 13-cv-5097-PJH, 2015 WL 5681323 (N.D. Cal. 2015).........................7

*Ross v. U.S. Bank Nat'l Ass'n*,
Civ. No. 3:07–2951 SI, 2010 WL 3833922 (N.D. Cal. 2010)....................14

*Rutti v. Lojack Corp., Inc.*,
596 F.3d 1046 (9th Cir. 2010) ..................................................................4, 8

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ......................................................................14

*Thio v. Genji, LLC*,
    14 F.Supp.3d 1324 (N.D. Cal. 2014) ...........................................................6, 7

*Van Vranken v. Atlantic Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ................................................................14

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F.Supp.2d 1114 (E.D. Cal. 2009)............................................................11

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................11, 13


**Statutes, Rules and Regulations**

29 C.F.R. § 541.500 ..........................................................................................7

29 C.F.R. § 785.35 .......................................................................................4, 8

29 U.S.C. § 207 ................................................................................................2

29 U.S.C. § 211(a) ..........................................................................................10

29 U.S.C. § 212(b) ..........................................................................................10

29 U.S.C. § 217 ...............................................................................................11

29 U.S.C. § 216(b) ....................................................................................12, 13

29 U.S.C. § 255 .......................................................................................3, 6, 9

29 U.S.C. § 260 ................................................................................................9

Business & Professional Code § 17200 ...........................................................5

Federal Rule of Civil Procedure, Rule 68 ............................................ *passim*

N.Y. Labor Law § 198(3) .................................................................................6

NOT. OF MOT. & MOT. FOR SETTLEMENT APPROVAL,
CASE NO.: 4:17-cv-02080-EMC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The original nine named Plaintiffs Cooper Gillespie, Leighton Wynter, Christopher Castle, Michael Conway, William Sean Dunegan, Skyler Fisk, Jeff Folz, Randy Hill, and Dennis Walsh, as well as opt-in Plaintiffs Ralph Barrett, Kenneth Caballero, Jerome Claussen, Deron Fletcher, Anthony Greiner, Javier Jimenez, Randolph Leach, Richard Parham, Steve Schanz, and Rob Washburne (together "Plaintiffs") seek approval of the settlement of their FLSA collective action. Plaintiffs allege Defendant improperly classified their "Customer Service Engineer" (aka "Customer Engineer") position as exempt from the FLSA. Plaintiffs assert that Defendant thereby failed to compensate them properly for overtime work. Defendant asserts that, at all relevant times, Plaintiffs were properly classified as outside salespersons. Nonetheless, the settlement will pay them each a very substantial average gross of $34,211 each (or average net $24,500 each).

The Court should approve the settlement because it represents a reasonable compromise of a *bona fide* dispute over overtime wages. Indeed, the Settlement Agreement[1] provides $650,000 in monetary relief to the nineteen Customer Engineers who opted to participate in this suit and who each signed the settlement, with Lumenis covering the employer's share of payroll taxes. Though the FLSA contains no private right of action for injunctive relief, the Settlement also provides for reclassification of the Customer Engineer position by June 2018. The settlement is a great result for all of its signatories, as well as all Customer Engineers – their colleagues – who compromise nothing with this Settlement but will nonetheless benefit from the reclassification. A prior similar lawsuit against Defendant did not result in reclassification of the position – leading to this suit.

Plaintiffs request approval of 25% of the common fund, or $162,500, in attorney fees though it is less than counsel's lodestar, and less than the named Plaintiffs agreed to pay for contingency representation (one-third). Plaintiffs request approval of $17,000 in costs, approval of a $5,000 enhancement payment to the first named Plaintiff on the case, and approval of Legal Aid at Work as the *cy pres* recipient, along with an order dismissing this case.

---

[1] Attached as Exhibit A to the Terp Decl.

NOT. OF MOT. & MOT. FOR SETTLEMENT APPROVAL,
CASE NO.: 4:17-cv-02080-EMC

## II.    PROCEDURAL AND FACTUAL HISTORY

### A.    Current and Prior Litigation

In *Ballard v. Lumenis* ("*Ballard/Cordero*")*,* No. 5: 15-cv-03164-HRL (N.D. Cal.) (filed July 8, 2015), a former employee brought a collective action alleging Defendant misclassified Customer Engineers as exempt from the FLSA's overtime pay requirements under 29 U.S.C. § 207. Out of a collective of roughly fifty-four individuals, seven opted to join the case. *Id.*, 2016 WL 4529586, at *1 (N.D. Cal., Aug. 3, 2016). Plaintiff Ballard and four other Customer Engineers accepted Federal Rule of Civil Procedure, Rule 68 offers from Defendant. *Id*. Two opt-in plaintiffs eventually received court approval to settle their claims along with attorney fees and costs. *Id.*

Defendant did not reclassify the Customer Engineers after the *Ballard/Cordero* case. *See* Gillespie Decl. ¶¶ 2, 14. Instead, in early 2017, Defendant presented Customer Engineers with a new employment agreement that contained a mandatory arbitration clause. Gillespie Decl. ¶ 16.

On April 13, 2017, nine named Plaintiffs filed this putative FLSA collective action against Defendant alleging that Customer Engineers were denied proper overtime compensation as required by the FLSA. ECF 1. The complaint also asserted individual California and New York wage and hour claims. *Id.* In July 2017, the Parties stipulated to conditional certification of an opt-in FLSA collective (ECF 22, 27), and Plaintiffs subsequently distributed the agreed-upon judicial notice to those members of the fifty-five-person putative collective who were not already named Plaintiffs in the case (Terp Decl. ¶ 2). Including the original Plaintiffs, nineteen Customer Engineers opted to join the case and thereafter settled their claims. Exhibit A; ECF 1-1, 6, 10, 31, 33 - 37.

### B.    Facts Regarding Plaintiffs' Claims

In *Ballard/Cordero*, as in the present case, Lumenis claimed to have classified Plaintiffs' and other Customer Engineers as exempt from the FLSA's overtime provisions "based solely on the outside sales exemption." *See* Exhibit B, p. 12:1-12; 2016 WL 4529586, at *1; ECF 21, p. 3:17-20. According to job descriptions and prior testimony, Defendant has described covered positions as responsible for installing and servicing the company's lasers, with no sales experience required. *See Ballard/Cordero*, No. 5:15-cv-03164-HRL, ECF 72-3 & 72-4, attached for the Court's convenience as Exhibits B & C to the Terp Decl. (deposition testimony); Exhibit 4 to Exhibit C of the Terp Decl. (job description); Exhibit C, p. 72:12-

74:4 (testimony regarding Exhibit 4); Exhibit D to the Terp Decl (internal job description). In the present case, Defendant's outside sales exemption defense would have rested on additional sales responsibilities that Defendants added to Customer Engineers' existing job duties following the initiation of the *Ballard/Cordero* lawsuit. Gillespie Decl. ¶ 13.

The nineteen Plaintiffs were similarly-situated with respect to their job titles, job duties, and the alleged overtime violations they experienced, regardless of their region. *See, e.g.,* Barrett Decl. (describing job duties and unpaid overtime, based in Washington State); Gillespie Decl. (same, based in California); Wynter Decl. (same, based in New York).

For those Plaintiffs who could not assert individual California or New York law claims, access to a three-year statute of limitations (as opposed to two) was dependent on a showing the Lumenis willfully violated the FLSA. 29 U.S.C. § 255(a). Plaintiff Wynter pled New York state law claims. ECF 1. Plaintiffs Gillespie, Claussen, Leach, and Fletcher possess individual California claims. Terp Decl. ¶ 10.

Plaintiffs Barrett and Fletcher faced barriers to recovery that the other Plaintiffs did not face because they had previously accepted Rule 68 offers during the *Ballard/Cordero* litigation. No. 5: 15-cv-03164-HRL, ECF 49 (judgment entered in the amount of $21,900 for Barrett); ECF 51 (judgment entered in the amount of $14,700 for Fletcher). As a current employee, Plaintiff Barrett could assert claims for the time that passed since he accepted the Rule 68 offer. Terp Decl. 11; Barrett Decl. ¶ 2. Plaintiff Fletcher did not work for Defendant after accepting the Rule 68 offer, and the Parties disputed whether he waived his individual California claims by accepting the Rule 68 offer. Terp Decl. 11.

## C.    Discovery

During the course of this litigation, Plaintiffs engaged in substantial discovery. Terp Decl. ¶ 3. Beyond reviewing the *Ballard/Cordero* discovery made public in that case, Plaintiffs propounded written discovery requests on Defendant, and ultimately received thousands of pages of handbooks, annual training documents, compensation plans, personnel files, paystubs, travel and labor time records, and a 2017 arbitration agreement Defendant circulated to Customer Engineers shortly before the litigation commenced. *Id.*

These documents clearly illustrated Plaintiffs' jobs duties. *Id.* The travel and labor time records that Defendant produced also partially described Plaintiffs' travel time to onsite jobs, the time spent on

labor at the onsite jobs, and Plaintiffs' estimated travel time to return home. *Id.* ¶ 4; Gillespie Decl. ¶ 17. Plaintiffs assert that these time records did not record the hours they spent performing work-related duties at home or otherwise not on-site, and frequently underestimated the return times from a job, but each Plaintiff provided counsel information regarding all of his time worked. Terp Decl. ¶ 4; Gillespie Decl. ¶¶ 17.

### D.    Settlement Negotiations

The Settlement was the result of contentious, arms'-length negotiations between Plaintiffs and Defendant. Terp Decl. ¶ 6. Plaintiffs were intent on obtaining re-classification of their position from the outset of this litigation. Terp Decl. ¶ 5; Gillespie Decl. ¶ 13. On September 18, 2017, the Parties attended a full-day mediation with seasoned mediator Steve Rottman in Southern California,[2] which did not result in a settlement. Terp Decl. ¶ 6; Gillespie Decl. ¶ 18. On November 15, 2017, the Parties attended a second, full day of mediation with Mr. Rottman in Southern California, and were able to arrive at a memorandum of understanding ("MOU") which laid out the material terms of a settlement agreement. Terp Decl. ¶ 6; Exhibit F to Terp Decl. (MOU). The Parties continued to meet and confer regarding the details of a settlement agreement, and all Parties finally, fully executed the proposed Settlement Agreement on February 1, 2018. Exhibit A.

In preparing their case for trial and mediation, Plaintiffs calculated their potential recovery. Terp Decl. ¶ 13. One significant variable in Plaintiffs' damage calculation is the number of overtime hours worked. Defendant did not require that Plaintiffs complete time sheets to track their time. Terp Decl. ¶¶ 4, 13; Gillespie Decl. ¶ 17. However, Defendant did track Plaintiffs' labor hours (*i.e.,* repair or installation time) and travel time. Terp Decl. ¶ 4; Gillespie Decl. ¶ 17. In Plaintiffs' view, these records underreported Plaintiffs' total hours worked because they did account for administrative time, meetings, inventory management, and host of other work activities. Terp Decl. ¶ 4; Gillespie Decl. ¶ 17. Nevertheless, Plaintiffs calculated their potential recovery should Defendant establish that Plaintiffs' work time was accurately reflected by the hours recorded in the time tracking systems. Terp Decl. ¶ 13. Importantly, Plaintiffs treated all the travel time in those records as compensable work time, even though there was a very substantial litigation risk that this time would be found to be non-compensable commute time. *Id.*

---

[2] The mediator's resume is Exhibit E to the Terp Decl.

*See Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1051-54 (9th Cir. 2010); *see also* 29 C.F.R. § 785.35 (employee's travel from home to work is not compensable "whether he works at a fixed location or at different job sites."). Plaintiffs' unliquidated overtime damages amount based on Defendants labor and time records came to $424,564.35 for the nineteen Plaintiffs. Terp Decl. ¶ 13.

### E.     Settlement Agreement

The Settlement Agreement provides a non-reversionary gross settlement payment of $650,000 ("Total Settlement Amount") to the nineteen Plaintiffs (Exhibit A, ¶ 6), with Defendant covering the employer's portion of payroll taxes (*id*, ¶ 11), and Defendant's commitment to convert all Customer Engineers from salaried to hourly employees by June 1, 2018 (*id.*, ¶ 7).

Under the terms of the Settlement Agreement, Defendant would not oppose Plaintiffs' counsel seeking up to one-third of the Total Settlement Amount in attorney fees and $18,000 in costs. Exhibit A, ¶ 8. Yet, by this Motion, Plaintiffs' counsel seeks only 25% of the Total Settlement Amount, $162,500, in attorney fees and $17,000 in costs. Terp Decl. ¶ 8. Counsel's customary billing rates have been approved frequently by this and other courts, and at their customary rates, Plaintiffs' counsel has accrued approximately $170,000 in fees to date, before settlement approval and administration. *Id.* ¶¶ 17, 18;_Exhibit G to Terp Decl. The requested costs include amounts accrued as well as some small projected costs of seeing the Settlement through final approval and disbursement. *Id.*, ¶ 17. Exhibit H to Terp Decl.

The Settlement also provides that Defendant will not oppose Plaintiffs' counsel's request for an enhancement / service payment to the first named Plaintiff, who represented the collective at mediation, Plaintiff Gillespie, in an amount not to exceed $5,000, in exchange for his global release of claims. Exhibit A, ¶ 9.

After the proposed attorneys' fees, costs, and enhancement payment are subtracted from the Total Settlement Amount, a Net Settlement Amount of $465,500 remains. Terp Decl. ¶ 9. This amount is more than $40,000 larger than the amount Plaintiffs were owed (pre-liquidated damages) based on the company's labor and travel time records, using the most favorable assumptions. *Id.* ¶¶ 9. 13. The Net Settlement Amount will be apportioned as described in Exhibit A – an average of $24,500 per Plaintiff. *Id.* ¶ 9; Exhibit A. The Plaintiffs' payments will be characterized as one-third wages, one-third liquidated damages and penalties, and one-third interest. Exhibit A, ¶ 11.

Each Plaintiff was allotted a *pro rata* share based on the number of workweeks they worked relative to the other Plaintiffs, and subject to certain adjustments. Terp Decl. ¶ 9. Plaintiffs' counsel subjected: Plaintiff Wynter's workweeks to New York's six-year statute of limitations for wage claims (N.Y. Lab. Law § 198(3)); Plaintiffs Gillespie's, Claussen's, Leach's, and Fletcher's workweeks to California's four-year statute of limitations for wage claims (Bus. & Profs. Code § 17200); and the remaining Plaintiffs' workweeks to the FLSA's three-year statute of limitations for willful violations (29 U.S.C. § 255(a)). Terp Decl. ¶ 9. Plaintiffs' Counsel also weighted the workweeks so that California Plaintiffs' workweeks were worth 4/3 as much as the non-California Plaintiffs' workweeks, to account for additional claims and penalties supported by that state's laws. *Id.* Finally, Plaintiff Fletcher's allocation was reduced by the amount of his accepted Rule 68 offer in the *Ballard/Cordero* litigation, and Plaintiff Barrett's allocation was limited to the time-period following entry of judgment on his Rule 68 offer, to avoid any windfall. Terp Decl. ¶ 9.

While Plaintiff Gillespie has agreed to a general release of claims by this Settlement (Exhibit A, ¶¶ 15-16), the eighteen other Plaintiffs only release claims related to the facts and causes of actions set forth in the Complaint (*id.*, ¶¶ 13-14).

In the unlikely event that any checks issued to the opt in Plaintiffs remain un-cashed within one-hundred and eighty days, those amounts will be allocated to a *cy pres* recipient. Exhibit A, ¶ 12. Plaintiffs request the Court approve Legal Aid at Work as the *cy pres* recipient in this case. Terp Decl. ¶ 20.

## III. THE COURT SHOULD GRANT APPROVAL OF THE SETTLEMENT AND ENTER JUDGMENT.

Plaintiffs seek the Court's approval of this settlement because, in order to be enforceable, FLSA settlements must be supervised reviewed by a court for basic fairness, unless they are approved by the Department of Labor. *Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1333 (N.D. Cal., Aug. 7, 2014) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-55 (11th Cir. 1982)). Court approval serves as a safeguard that an FLSA settlement is not "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food*, 679 F.2d at 1354. Courts should therefore approve settlements that reflect a "reasonable compromise over issues" that are "actually in dispute." *Id.*

### A.     The Plaintiffs are Similarly Situated.

The FLSA authorizes "opt-in" representative actions "where the complaining employees are similarly situated." *Betorina v. Randstad US, L.P.,* No. 15-CV-03646-EMC, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017). Here, the Court previously granted conditional certification to the collective, and Plaintiffs remain similarly situated, regardless of their geography. EFC 27. *See supra,* citing the Barrett, Gillespie, and Wynter Declarations, showing similarity nationwide.

### B.     This Case Presents a Bona Fide Dispute over Entitlement to Wages.

In order to approve a settlement of FLSA claims proposed by an employer and employees, the Court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute." *Thio*, 14 F. Supp. 3d at 1333 (citing *Lynn's Food*, 679 F.2d at 1353); *Jones v. Agilysys, Inc.*, No. C 12-03516 SBA, 2013 WL 4426504, at *2 (N.D. Cal. Aug. 15, 2013). The Parties and their counsel vigorously pursued their positions in this case, participating in two mediations, and continued arms'-length negotiations, supported by discovery, and legal and factual analysis. Were this case to proceed, Plaintiffs would need to support continued collective treatment, prove liability, establish the amount of damages, and justify the method of calculating damages. Each of these issues was considered by the Parties in mediation and throughout the subsequent settlement discussions and led to the negotiated settlement that Plaintiffs have embraced. The settlement is a "reasonable compromise" on numerous "bona fide" issues.

#### 1.     Risks Presented by Exemption Defenses.

Plaintiffs faced some exposure on Lumenis's exemption defense. Because it is uncertain how a trier of fact would decide whether Defendants' claimed FLSA outside sales exemption applies to the Customer Engineers, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food*, 679 F.2d at 1354.

To establish an outside sales defense, Lumenis must show Plaintiffs' "primary duty" is "making sales" or obtaining orders or contracts." 29 C.F.R. § 541.500. Plaintiffs believe the evidence would show that their primary duty was installing, maintaining, and repairing lasers, and that installing, maintaining, and repairing lasers is not a sales activity. Lumenis' corporate officials would testify to the contrary, *i.e.,* that these repair activities are incidental to sales. *See Ross v. Ecolab Inc.*, No. 13-cv-5097-PJH,_2015 WL 5681323, at *3 (N.D. Cal. 2015) ("The federal [outside sales] exemption also allows activities 'incidental

to sales' to be counted as sales-related activity."). Further, Defendant's introduction of additional, purely sales duties recently would give Defendant a better chance to prove Customer Engineers' exempt status.

### 2.    Risk of Decertification

Defendants uniformly classified Customer Engineers as exempt, and Plaintiffs believe that collective treatment is appropriate.  However, Plaintiffs would need to present evidence beyond the uniform classification to defeat Defendant's likely motion to decertify the FLSA collective.  *See Lewis v. Wells Fargo & Co.*, 669 F.Supp.2d 1124, 1127 (N.D. Cal. 2009) (outlining two-stage process for evaluating whether plaintiffs are "similarly situated."). If this case proceeded, Defendant would likely move to decertify, citing variations in Plaintiffs' work location and environment, supervision, and experience. Defendant would also contend that damages are individualized and would not be susceptible to common proof. If Defendant were successful in decertifying, Plaintiffs would be forced to attempt to pursue their limited-value claims in dispersed individual proceedings across the country – a costly, risky, and judicially-inefficient outcome.

### 3.    Amount of Overtime

Even if Plaintiffs established liability, there would be a *bona fide* dispute over the number of overtime hours Plaintiffs worked. Defendant contends that Plaintiffs' labor and travel records reflect their overtime worked. Terp Decl. ¶ 4. These records show Plaintiffs' unliquidated overtime damages would have been less than they are recovering here, on the best day in court, if they were limited to claiming these hours. Although Plaintiffs contend these records are not conclusive as to overtime worked, and that they worked numerous additional weekly overtime hours that were not captured by those records, Plaintiffs' proof would likely rest mostly on their own recollections, long after the events.

Additionally, the Parties would likely file cross summary judgment motions to determine whether employee's commute time to job sites could be included in the overtime calculation. While Plaintiffs treated all the travel time in those records as compensable work time for their damage calculation, even in the Ninth Circuit much of their travel time could have been found to be non-compensable commute time. *See Rutti*, 596 F.3d at 1051-54; 29 C.F.R. § 785.35. Each Plaintiff's travel time represented between one quarter and three quarters of their recorded work hours, so an adverse ruling holding most travel time

non-compensable would have decimated and potentially wiped out Plaintiffs' overtime claims. Terp Decl. ¶ 4.

### 4.    Calculation of Overtime

Defendant could possibly have successfully asserted a good-faith defense that would have limited the statute of limitations to two years for most Plaintiffs, also precluding an award of liquidated damages. *See* 29 U.S.C. §§ 255, 260. *See, e.g., Bratt v. Cty. of Los Angeles*, 912 F.2d 1066, 1071 (9th Cir. 1990) (refusing to award liquidated damages due to defendant's good faith).

### 5.    Other Disputes

As in the *Ballard/Cordero* litigation, there is a risk that Defendant would have made Rule 68 offers to all of the class members. Rule 68 provides "an additional inducement to settle in those cases in which there is a strong probability that the plaintiff will obtain a judgment but the amount of recovery is uncertain." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981).

For the above stated reasons, the Court should find that the settlement agreement is a reasonable compromise of a *bona fide* dispute over FLSA coverage.

### C.    The Settlement is a Reasonable Compromise of Disputed Issues

The settlement reflects a compromise on all of the disputed issues identified above.  Plaintiffs' entitlement to overtime, the amount of overtime, and the proper calculation of damages are all disputed; the settlement reflects compromise on all of these issues.

This settlement provides prompt payment of a substantial amount certain without the expense and delay of trial and an appeal. After all, "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). *See also Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013) (settlement provides a "significant benefit that [Plaintiffs] would not receive if the case proceeded—certain and prompt relief").

Wage-and-hour misclassification cases are particularly uncertain and especially protracted battles. In the *Novartis Wage and Hour Litigation*, after winning on appeal (611 F.3d 141 (2d Cir. 2010)), the pharmaceutical sales representative plaintiffs settled their misclassification action for $99 million – and were granted final approval less than a month before *Christopher v. SmithKline Beecham Corp.*, 132 S.

1  Ct. 2156 (2012) (abrogating *In re Novartis Wage and Hour Litig.*), which found this position exempt under

2  the FLSA, and would have left the *Novartis* plaintiffs empty-handed. *See also, e.g., In re Farmers*

3  *Insurance Exchange*, 481 F.3d 1119, 1132 (9th Cir. 2007) (reversing a $52.5 million plaintiffs' verdict,

4  finding claims adjusters exempt). Here, Plaintiffs could have litigated their claims through trial and years

5  of appeals only to recover nothing, as happened in *Farmers* and nearly happened in *Novartis.*

6      A wage and hour case against U.S. Bank, filed in December 2001, resulted in a substantial verdict

7  for the plaintiffs in September 2008, which was reversed almost six years later by the California Supreme

8  Court, and then remanded for reconsideration of class certification and retrial about 13 years after it was

9  commenced. *See Duran v. U.S. Bank, NA*, 59 Cal. 4th 1, 14 (2014). In May 2016, class certification was

10  denied by Alameda County Superior Court. Exhibit I to Terp Decl. (Docket Entry for Ord. Denying Class

11  Cert*, Duran v. U.S. Bank, NA*, Case No. 2001035537 (Alameda Cnty. Sup. Ct. May 19, 2016)). The 160+

12  individual plaintiffs' case was refiled, and they were removed to federal court – essentially, restarting their

13  case from scratch. *See* Dkt. 1, Notice of Removal, *Alila-Katita et al v. U.S. Bank Nat'l Ass'n*, No. 4:16-

14  cv-3950 (N.D. Cal. Jul. 13, 2016). The only certain route to prompt payment for Class Members is this

15  Settlement.

16      "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery

17  will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628.

18  "Ultimately the amount of the [settlement payments] will be less than what some class members feel they

19  deserve but, conversely, more than the defendants feel those individuals are entitled to.  This is precisely

20  the stuff from which negotiated settlements are made." *Id.*  The Court should approve the Settlement

21  because the payments to Plaintiffs are substantial, and they represent a reasonable compromise of

22  Plaintiffs' FLSA and related state law wage and hour claims arising out of hours worked as underwriters

23  prior to the reclassification.

24      As noted above, Plaintiffs agreed to accept a net average of roughly $24,500. Terp Decl. ¶ 9. When

25  factoring in the payments that Plaintiffs Barrett and Fletcher received by accepting Rule 68 offers in the

26

27

28

NOT. OF MOT. & MOT. FOR SETTLEMENT APPROVAL,
CASE NO.: 4:17-cv-02080-EMC

*Ballard/Cordero* lawsuit, the nineteen Plaintiffs will have received an average of $26,500 from Lumenis after distribution of the settlement funds. Terp Decl. ¶ 9.[3]

In addition, the Settlement Agreement provides for prospective relief in the form of the reclassification of the Customer Engineer position, which Plaintiffs could not have obtained even with a trial victory. 29 U.S.C. § 211(a), 212(b), 217; *Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("[I]n construing the enforcement sections of the FLSA, the courts had consistently declared that injunctive relief was not available in suits by private individuals but only in suits by the Secretary."); *Keenan v. Allan*, 889 F. Supp. 1320, 1382 (E.D. Wash. 1995) (individuals may not sue for injunctive relief in FLSA wage claims). Prospective relief must be considered in evaluating the true value of a settlement. *See, e.g., In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (considering that benefits to the class went beyond the settlement fund); *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 922-23 (9th Cir. 2014) (depublished on other grounds) (taking injunctive relief into account in assessing settlement value); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) ("Non-monetary benefits" to the Class, such as causing the defendant "to change its personnel classification practices," are "a relevant circumstance" in evaluating a class settlement). This result is more than sufficient to warrant settlement approval, especially given the litigation variables that could drop Plaintiffs' recovery below their settlement amount, the potential consequences of Defendants making Rule 68 offers and Plaintiffs failing to beat them, and the delay associated with continued litigation. Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

The settlement is also reasonable because the proposed release, for all Plaintiffs except Plaintiff Gillespie, only requires Plaintiffs to release claims related to the facts and claims alleged in the complaint. *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) (preliminarily approving settlement in which class members only released claims "based on or arising from the allegations that they were or are improperly compensated under federal, California, or local law."). Plaintiffs' Counsel advised Plaintiff Gillespie about the scope of his general release, and Plaintiff

---

[3] This amount is slightly more than the roughly $25,800 average payment that the seven opt-in plaintiffs received from the *Ballard/Cordero* lawsuit. Terp Decl. ¶ 9.

1  Gillespie determined that the service payment sought would be adequate consideration for the general

2  release. Terp Decl. ¶ 8.

3  ### D.    *Lynn's Food* Strongly Supports Approval Here.

4  Though the Rule 23 class settlement approval regime does not apply to a FLSA settlement under

5  29 U.S.C. § 216(b), in *Lynn's Food,* the Eleventh Circuit held that court approval is necessary in such

6  settlements to avoid employer abuses that deprive workers of wages to which they have been found to be

7  entitled. *Lynn's Food*, 679 F.2d at 1353. The settlement in that case presents a perfect contrast with this

8  one. In *Lynn's Food,* the employer coerced *unrepresented* employees to share a settlement payment of

9  $1,000 among fourteen employees. *Id.* The Department of Labor had already found the employees were

10  entitled to back wages under the FLSA worth more than 10 times as much. *Id.* The employees had no

11  access to an attorney, some could not even speak English, and they "seemed unaware" of the DOL's

12  findings in their favor. *Id.* at 1354.

13  Here, the workers have been represented ably. The settlement negotiations were fair, thorough,

14  and occurred at arms' length through two mediations and for months thereafter. In arriving at this

15  Settlement Agreement, the Parties exchanged data regarding Plaintiffs' potential recovery, and Class

16  Counsel engaged in sufficient fact investigation and discovery prior to settlement. The $650,000

17  settlement will result in an average of tens of thousands of dollars per Plaintiff of compensation – though

18  Defendant has hotly disputed the employees' entitlement to overtime pay, and though Plaintiffs have not

19  yet proven any aspect of their case. The Settlement was not forced upon the Plaintiffs; rather, each Plaintiff

20  individually considered and personally approved the Settlement, without exception. The Settlement has

21  also resulted in a major corporate reform which will address the underlying complaints (unpaid overtime)

22  and provide substantial additional compensation to Customer Engineers going forward, which they could

23  not have won through continuing this litigation. This Settlement is the opposite of the one rejected in

24  *Lynn's Food,* and the Court should approve it.

25  ### E.    The Standard of Approval for a FLSA Settlement Is Lower than for a Rule 23

26  Settlement.

27  FLSA collective actions are not subject to the standards imposed by the Rule 23 settlement review

28  process. *Campanelli v. Hershey Co.*, No. C 08–1862 BZ, 2011 WL 3583597, at *1 (N.D. Cal. May 4,

---

12

2011). Unlike Rule 23 class members, who are automatically considered class participants unless they opt-out, plaintiffs in FLSA collective actions must affirmatively opt-in to benefit from settlement. All other Customer Engineers have a full right to pursue their own actions, by virtue of their non-participation here, under 29 U.S.C. §216(b). There are no absent class members at issue.

## IV.   THE COURT SHOULD APPROVE PLAINTIFFS' ATTORNEY'S FEES AND COSTS

The FLSA calls for the defendant to pay the prevailing plaintiffs' attorneys' fees and costs. *See* 29 U.S.C. § 216(b). Plaintiffs now seek attorneys' fees of one-fourth of the common fund, which is the Ninth Circuit's benchmark fee award in a case like this, *In re Bluetooth*, 654 F.3d at 942,[4] as well as $17,000 costs. Terp Decl. ¶ 8. The attorneys' fees requested are appropriate because Plaintiffs signed legal services agreements authorizing a larger, one-third contingent fee in addition to payment of costs, and because the fees are below Plaintiffs' counsel's lodestar. *Id.* ¶¶ 15, 16. *See Vizcaino*, 290 F.3d at 1050 ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award."). The costs are roughly the amount Plaintiffs expect to incur by the time Plaintiffs' counsel fully administers the settlement. *Id.* ¶ 17.

Plaintiffs' Counsel took this case on a contingency basis. Terp Decl. ¶ 14. Therefore, Plaintiffs' Counsel did not receive any payment for their time spent litigating the case, nor did they receive reimbursement for their out of pocket costs during the litigation. *Id.* Plaintiffs' counsel alone undertook the financial risk of unsuccessful litigation. *Id.* The contingent nature of this litigation makes these fees appropriate. *See*, *e.g.*, *Vizcaino,* 290 F.3d at 1050.

## V.   THE COURT SHOULD APPROVE PLAINTIFF GILLESPIE'S ENHANCEMENT.

The proposed enhancement payment for the first-named Plaintiff Gillespie is intended to recognize his initiative, risks, and efforts on behalf of the Customer Engineers. His name is listed first and he traveled to Southern California to attend mediation representing all the Plaintiffs. Gillespie Decl. ¶ 18. As such, Plaintiffs' request of a modest, presumptively-reasonable enhancement payment of $5,000 to Plaintiff Gillespie is amply justified by the case law. *Harris v. Vector Mktg Corp.*, No. C-08-5198 EMC, 2012 WL

---

[4] *See also Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). Frequently, courts award a higher percentage of the common fund than the benchmark 25%. *See, e.g., Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663, 664 (9th Cir. 2003) (affirming 33% fee award); *In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (same).

381202, at *7 (N.D. Cal. Feb. 6, 2012) (noting that Northern District courts have indicated that an incentive payment of $5,000, as a general matter, is a reasonable amount). *See also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (recognizing that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding $50,000 to lead plaintiff; listing factors Courts should consider when approving awards for service, including the representative's financial and other risk in commencing the suit, the amount of time and effort spent by the class representative, and notoriety of being a representative, etc.); *Ross v. U.S. Bank Nat'l Ass'n*, Civ. No. 3:07–2951 SI, 2010 WL 3833922, at **2-4 (N.D. Cal. Sept. 29, 2010) (approving a $20,000 award to each of four named plaintiffs where settlement fund was $1,050,000.00, based on their contributions to litigation and the risk that being a class representative would harm their reputation); *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609, 2013 WL 3541217, at *10 (N.D. Cal. July 11, 2013) (approving three $25,000 enhancement awards in FLSA settlement of $1.25 million, or 6% of fund).

The Court should award Plaintiff Gillespie for his efforts and the consideration provided for the general release that he signed, which is more expansive than the release agreed to by the other Plaintiffs. *See, e.g., Dent v. ITC Serv. Group*, No. 2:12-CV-00009-JCM-VCF, 2013 WL 5437331, at *4 (D. Nev. Sept. 27, 2013) (approving $15,000 enhancement award out of wage and hour settlement, recognizing that class representative provided general release not provided by other class members).

## VI.    THE REQUESTED *CY PRES* BENEFICIARY IS APPROPRIATE.

Legal Aid at Work meets the *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2013) test, "that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." The present case seeks to enforce wage protections, and four of the Plaintiffs performed their work in California. Legal Aid at Work is the leading provider of direct legal services in employment law for low-wage workers in California. Terp Decl. ¶ 20. The Court should approve this beneficiary for any *cy pres* funds in this non-reversionary settlement.

## VII.   CONCLUSION

For the reasons stated above, Plaintiffs request that the Court approve Plaintiffs proposed Settlement Agreement, request for attorney fees and costs, Plaintiff Gillespie's enhancement payment,

and the proposed *cy pres* beneficiary. Upon approval of all these requests, Plaintiffs also seek dismissal of this case with prejudice.

Dated: February 2, 2018                                    BRYAN SCHWARTZ LAW

                                                           By: */s/ Rachel M Terp* _____
                                                           Rachel M. Terp
                                                           *Attorneys for Plaintiffs and*
                                                           *Others Similarly Situated*

NOT. OF MOT. & MOT. FOR SETTLEMENT APPROVAL,
CASE NO.: 4:17-cv-02080-EMC